## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EPSILON ENERGY USA, INC., | |
| *Plaintiff,* | |
| v. | CIVIL ACTION NO. |
| CHESAPEAKE APPALACHIA, LLC, | |
| *Defendant.* | |

## VERIFIED COMPLAINT

Plaintiff Epsilon Energy USA, Inc. ("Epsilon"), by and through its attorneys, files this Verified Complaint against Defendant Chesapeake Appalachia, LLC ("CHK") and states as follows:

## PARTIES

1.      Epsilon is an Ohio corporation with its principal place of business in Houston, Texas.

2.      The citizenship of a corporation is determined by its state of incorporation and the location of its principal place of business. *See* 28 U.S.C. § 1332(c)(1).

3.      Thus, Epsilon is a citizen of Texas and Ohio.

4.  CHK is an Oklahoma limited liability company with its principal place of business in Oklahoma City, Oklahoma.

5.  CHK's sole member is Chesapeake Energy Corporation, an Oklahoma corporation with a principal place of business in Oklahoma City, Oklahoma.

6.  Chesapeake Energy Corporation is an Oklahoma citizen.

7.  The citizenship of a limited liability company is determined by the citizenship of its members. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 348 (3d Cir. 2013)).

8.  Defendant CHK is therefore a citizen of Oklahoma.

## JURISDICTION AND VENUE

9.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between Epsilon and CHK, and the amount in controversy exceeds $75,000, excluding interest and costs. 28 U.S.C. § 1332(a).

10.  Venue for this matter lies in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Epsilon's claims took place in this district and the property that is the subject of this action is situated in Susquehanna County, Pennsylvania, which is located in this District. 28 U.S.C. § 1391(b)(2).

11.     An actual controversy exists between the parties hereto within the meaning of 28 U.S.C. § 2201, *et seq*, with respect to CHK's duties under certain Joint Operating Agreements ("JOAs") which were entered into by Epsilon and CHK, as well as others.

## FACTUAL BACKGROUND

**A.     The Joint Operating Agreements**

12.     Beginning in 2009, Epsilon and CHK, along with other oil and gas companies (each a "JOA Party" and collectively, the "JOA Parties"), began entering into JOAs for units covering acreage subject to oil and natural gas leases which had been or would be pooled for the purposes of natural gas development.

13.     Epsilon and CHK are parties, among other entities, to an Operating Agreement dated July 6, 2010 for the Cannella North Unit ("Cannella North JOA"). A true and correct copy is attached hereto as Exhibit 1.

14.     Epsilon and CHK are parties, among other entities, to an Operating Agreement dated July 12, 2010 for the Rylee North Unit ("Rylee North JOA"). A true and correct copy is attached hereto as Exhibit 2.

15.     Epsilon and CHK are parties, among other entities, to an Operating Agreement dated October 18, 2010 for the Baltzley North Unit ("Baltzley North JOA"). A true and correct copy is attached hereto as Exhibit 3.

16.     Epsilon and CHK are parties, among other entities, to an Operating Agreement dated October 18, 2010 for the Baltzley South Unit ("Baltzley South JOA"). A true and correct copy is attached hereto as Exhibit 4.

17.     Epsilon and CHK are parties, among other entities, to an Operating Agreement dated June 10, 2014 for the Cannella South Unit ("Cannella South JOA"). A true and correct copy is attached hereto as Exhibit 5.

18.     Though CHK represented to Epsilon that the terms of all of the JOAs were identical, there are certain inconsistencies between them.

19.     As part of the JOAs, Epsilon and CHK agreed to contribute their interests in oil and gas leases and to jointly develop those leases as units within the identified contract area of the JOAs.

20.     Each JOA identifies each JOA Party's working interest thereunder.

21.     Each of the JOAs at issue herein covered a different pooled unit, which is identified as the "contract area."

22.     Each JOA is a stand-alone document with different terms, parties and assets.

23.     Under each of the JOAs, CHK, in addition to owning working interests, is designated as the default operator for wells drilled thereunder.  Exhibit 1, Cannella North JOA, Article V.A. (Designation and Responsibilities of Operator); Exhibit 5,

Cannella South JOA, Article V.A.; Exhibit 3, Baltzley North JOA, Article V.A.; Exhibit 4, Baltzley South JOA, Article V.A.

24.     Any JOA Party is entitled to propose the drilling and completion of a well ("Well Proposal").  Exhibit 1, Cannella North JOA, Article VI.1 (Proposed Operations); Exhibit 5, Cannella South JOA, Article VI.B.1.; Exhibit 3, Baltzley North JOA, Article VI.1; Exhibit 4, Baltzley South JOA, Article VI.1.

25.     Upon receipt of the Well Proposal, the other JOA Parties are required to elect to whether they will consent to participate with their working interests. Exhibit 1, Cannella North JOA, Article VI.1 (Proposed Operations); Exhibit 5, Cannella South JOA, Article VI.B.1. (Proposed Operations); Exhibit 3, Baltzley North JOA, Article VI.1; Exhibit 4, Baltzley South JOA, Article VI.1.

26.     Additionally, if a party other than CHK issues the Well Proposal, CHK must elect whether or not to act as operator.  Exhibit 1, Cannella North JOA, Article V.2.(a) (Determination of Participation); Exhibit 5, Cannella South JOA, Article VI.B.2.(a); Exhibit 3, Baltzley North JOA, Article VI.2.(a).; Exhibit 4, Baltzley South JOA, Article VI.2.(a).

27.     If CHK does not elect to be the operator, one of the consenting parties acts as the operator for the Well Proposal.  Exhibit 1, Cannella North JOA, Article V.2.(a) (Determination of Participation); Exhibit 5, Cannella South JOA, Article

VI.B.2.(a); Exhibit 3, Baltzley North JOA, Article VI.2.(a); Exhibit 4, Baltzley South JOA, Article VI.2.(a).

28.     If any JOA Party wishes to propose operations which conflict with the Well Proposal, it has 30 days to propose those conflicting operations.  Exhibit 1, Cannella North JOA, Article VI.6. (Order of Preference of Operations); Exhibit 5, Cannella South JOA, Article VI.B.6.; Exhibit 3, Baltzley North JOA, Article VI.6; Exhibit 4, Baltzley South JOA, Article VI.6.

29.     If all JOA Parties elect to participate, CHK has 90 days to commence operations on the Well Proposal.  Exhibit 1, Cannella North JOA, Article VI.1 (Proposed Operations); Exhibit 5, Cannella South JOA, Article VI.B.1.; Exhibit 3, Baltzley North JOA, Article VI.1; Exhibit 4, Baltzley South JOA, Article VI.1.

30.     If less than all JOA Parties elect to participate, the proposing party is required to notify the other consenting JOA Parties of the working interests consenting and whether the proposing party recommends proceeding with the Well Proposal.  Exhibit 1, Cannella North JOA, Article V.2.(a). (Determination of Participation); Exhibit 5, Cannella South JOA, Article VI.B.2.(a); Exhibit 3, Baltzley North JOA, Article VI.2.(a); Exhibit 4, Baltzley South JOA, Article VI.2.(a).

31.     If a party other than the operator makes a Well Proposal, but the operator elects to participate and to operate the Well Proposal, the operator stands in for the proposing party after making such elections.

32.    The consenting JOA Parties are then given the opportunity to participate with their proportionate share of working interest which are not yet participating.  Exhibit 1, Cannella North JOA, Article V.2.(a). (Determination of Participation); Exhibit 5, Cannella South JOA, Article VI.B.2.(a); Exhibit 3, Baltzley North JOA, Article VI.2.(a); Exhibit 4, Baltzley South JOA, Article VI.2.(a).

33.    If the proposing party does not withdraw the Well Proposal, the proposing party is deemed to be participating with any outstanding interests needed to equal 100 percent participation.  Exhibit 1, Cannella North JOA, Article V.2.(a). (Determination of Participation); Exhibit 5, Cannella South JOA, Article VI.B.2.(a); Exhibit 3, Baltzley North JOA, Article VI.2.(a); Exhibit 4, Baltzley South JOA, Article VI.2.(a).

34.    Once 100 percent participation is reached, the operator has 90 days to commence operations of the Well Proposal.  Exhibit 1, Cannella North JOA, Article V.2.(a). (Determination of Participation); Exhibit 5, Cannella South JOA, Article VI.B.2.(a); Exhibit 3, Baltzley North JOA, Article VI.2.(a); Exhibit 4, Baltzley South JOA, Article VI.2.(a).

**B.    CHK's Refusal to Comply with Its Obligations under the Baltzley JOAs**

35.    Pursuant to the Baltzley JOAs, Epsilon proposed three wells on April 11, 2018: a Baltzley N SUS 7LH, Baltzley S SUS 6LH, and Baltzley S SUS 8LH to

be located in Rush Township, Susquehanna County, Pennsylvania (the "Proposed Baltzley Wells").

36.     Per the Baltzley JOAs, Epsilon requested that CHK elect between three options:  (1) operate and participate in the drilling and completion of the Proposed Baltzley Wells; (2) elect not to participate but operate the Proposed Baltzley Wells; or (3) elect not to participate in the Proposed Baltzley Wells and designate Epsilon as the operator.

37.     The other JOA parties included Equinor Onshore Properties, Inc. (f/k/a Statoil) ("Statoil") and Jamestown Resources ("Jamestown").

38.     Statoil elected not to participate in any of the Proposed Baltzley Wells, while Jamestown elected to participate with its interests only.

39.     On May 11, 2018, CHK responded that it did not consent to the drilling of the Proposed Baltzley Wells but that it would remain the operator of the contract area.

40.     As Epsilon advised via letter on May 16, 2018, CHK's response failed to comply with the terms of the Baltzley JOAs, which required CHK to make an election with regard to both (1) participation in the Proposed Baltzley Wells and (2) operation of the wells.

41.     Epsilon recognized CHK's May 11, 2018 election not to participate in the Proposed Baltzley Wells, but extended CHK's period to make an election regarding operatorship for five (5) business days.

42.     Two days later, CHK insisted that its response conformed to the requirements of the Baltzley JOAs and refused to make an election as to whether CHK would agree to operate the Proposed Baltzley Wells or designate Epsilon as the operator. *See* Exhibit 6, Letter from Keith Moffatt to Henry N. Clanton (dated May 18, 2018).

43.     On June 18, 2018, Epsilon reminded CHK that the Baltzley JOAs required Epsilon to notify the JOA parties of (1) the total working interests electing to participate in the Proposed Baltzley Wells and (2) whether Epsilon recommended proceeding with the Proposed Baltzley Wells.

44.     Epsilon further clarified that the Baltzley JOAs gave CHK, as Operator, 90 days from the consenting parties' elections to commence operations.

45.     Epsilon notified the JOA parties of the participation elections and of its decision to participate with the entire interest of the non-consenting parties. *See* Exhibit 7, Letter from Henry Clanton to Keith Moffatt (dated June 18, 2018)

46.     As of September 14, 2018, Epsilon had not received a response from CHK to its June 18, 2018 letter.

47.     On that date, counsel for Epsilon sent a letter to CHK discussing CHK's breaches of the Baltzley JOAs and stating that CHK's refusal to either drill the Proposed Baltzley Wells or to allow Epsilon to drill them would necessitate Epsilon taking legal action. *See* Exhibit 8, Letter to Henry Moffatt regarding Baltzley Wells (dated September 14, 2018).

## C.     The Approved Cannella Wells and Conflicting Allocation Wells

48.     On February 8, 2018, Epsilon proposed a Cannella N SUS 3LH well and a Cannella S SUS 4LH well (collectively, the "Cannella Wells") and a Cannella S SUS 6LH well (the "Cannella 6H Well").

49.     CHK appears to be moving forward with the Cannella 6H Well, albeit under a different name and subject to a new Well Proposal submitted by CHK.

50.     On March 8, 2018, CHK elected to participate in and to operate both of the Cannella Wells.

51.     Though CHK indicated in its election letter on March 8, 2018 that an Authorization for Expenditure ("AFE") would be forthcoming, Epsilon has not received AFEs from CHK for the Cannella Wells to date.

52.     To the best of Epsilon's knowledge, CHK has neither sought nor received well permits for the Cannella Wells.

53.     In letters dated August 15, 2018, CHK proposed two additional natural gas wells to be located on the Cannella well pad: a Cannella 24HC well and a

Cannella 25HC well (the "Allocation Wells").  *See* Exhibit 9, CHK Letters (dated August 15, 2018).

54.    The Allocation Wells would be drilled into both the Cannella South Unit and the Rylee North Unit.

55.    The working interests owned by the JOA Parties are not uniform between the two JOAs.

56.    Therefore, CHK also sought an amendment to reallocate the working interests under the Cannella South JOA and the Rylee North JOA.  *See* Exhibit 10, Allocation Consent Agreement Letter (dated August 15, 2018).

57.    CHK's proposed amended working interest allocation would dilute Epsilon's interests.

58.    The Allocation Wells would target the Upper Marcellus Formation, which is less productive than the Lower Marcellus.

59.    The Cannella Wells were proposed to target the more productive Lower Marcellus.

60.    CHK's Allocation Wells would materially conflict with the Cannella Wells that Epsilon proposed previously because the Auburn Gas Gathering System ("Auburn GGS") has limited capacity.

61.    CHK's Allocation Wells would materially conflict with the Cannella Wells that Epsilon proposed previously because the production from the Allocation

Wells would exhaust the available capacity, leaving none for any production from the Cannella Wells.

62.     CHK's Allocation Wells would materially conflict with the Cannella Wells that Epsilon proposed previously because the Cannella well pad has limited space for additional wells and cannot accommodate the Allocation Wells in addition to the Cannella Wells proposed by Epsilon.

63.     On September 14, 2018, Epsilon advised CHK that it did not consent to the proposed amendment to the JOAs nor did it consent to the Allocation Wells.

64.     Epsilon also noted that CHK could not unilaterally amend the Cannella South JOA and the Rylee North JOA and, therefore, was precluded from proceeding with the Allocation Wells.

65.     Epsilon informed CHK that CHK had failed to comply with the JOA provisions governing proposing conflicting operations.  *See* Exhibit 11, Letter to Courtney Moad regarding Cannella Wells (dated September 14, 2018).

66.     According to the Pennsylvania Department of Environmental Protection's ("PADEP") website, CHK obtained permits to drill and operate the Allocation Wells in early March 2018 – months before CHK proposed the Allocation Wells or to amend the pertinent JOAs.  *Facility Search Details*, PA. DEP'T ENVTL. PROT.,

https://www.ahs.dep.pa.gov/eFACTSWeb/searchResults_singleFacility.aspx?Facili

tyID=825132 (last visited Sept. 17, 2018, 10:50 AM).

67.     Upon information and belief, CHK commenced preliminary drilling

activities – operations which require notification to PADEP – before Epsilon and the

other JOA Parties received notice of CHK's proposal to drill the Allocation Wells.

68.     Upon information and belief, CHK never intended to drill, complete or

operate the Epsilon's Proposed Cannella Wells, but merely consented to participate

and operate to mislead Epsilon while CHK moved forward with its plans for the

Allocations Wells.

## COUNT I – DECLARATORY JUDGMENT
## (BALTZLEY JOAS)

69.     The allegations of paragraphs 1 through 68 are incorporated by

reference as if fully set forth herein.

70.     Under the terms of the Baltzley JOAs, CHK was required to make an

election with regard to ***both*** (1) participation in the Proposed Baltzley Wells and

(2) operation of the wells.

71.     Though CHK elected not to participate in the Proposed Baltzley Wells,

it refused to notify Epsilon whether CHK would act as the operator or designate

Epsilon as the operator instead.

72.     CHK's response to Epsilon's Proposed Baltzley Wells failed to comply

with the terms of the Baltzley JOAs.

73.     The Baltzley JOAs require CHK to either commence operations with respect to the Proposed Baltzley Wells within 90 days or designate a non-operator, such as Epsilon, as the operator in CHK's stead. CHK has refused to do either.

74.     Nothing in the Baltzley JOAs entitles CHK to unilaterally veto a Well Proposal.

75.     An actual, present and justiciable controversy has arisen between Epsilon and CHK concerning: (1) CHK's obligation to commence operations regarding the Proposed Baltzley Wells within 90 days from the date all parties elected to participate in those wells and (2) CHK's refusal to either operate the wells or designate another party, such as Epsilon, as operator instead.

WHEREFORE, Epsilon asks the Court to enter a judgment in its favor declaring that CHK had an obligation to make an election to operate or designate Epsilon as operator of the Proposed Baltzley Wells and failure to do so requires CHK to: (1) commence operations to drill the Proposed Baltzley Wells within 90 days from the date all parties elected to participate in those wells or (2) designate Epsilon as the operator and facilitate Epsilon's drilling operations, and grant Epsilon such other and further relief as the Court deems just and appropriate.

## COUNT II – DECLARATORY JUDGMENT
## (CANNELLA SOUTH AND RYLEE NORTH JOAS)

76.    The allegations of paragraphs 1 through 75 are incorporated by reference as if fully set forth herein.

77.    CHK has proposed to drill the Allocation Wells, which are superlaterals that will cross more than one unit.

78.    Each unit is governed by a separate JOA that has its own terms and ownership interests.

79.    Specifically, the Cannella South and Rylee North JOAs identify each JOA Party's interests thereunder.

80.    Those interests are not uniform between the two agreements.

81.    The JOAs do not, however, permit CHK to propose wells crossing unit boundaries.

82.    Likewise, they do not permit CHK to reallocate the stated working interests in the units.

83.    Therefore, CHK has sought consent to amend the JOAs to reallocate the interest under the JOAs with regard to the proposed Allocation Wells. *See* Exhibit 10, Allocation Consent Agreement Letter.

84.    In so doing, CHK has conceded that consent from ***all parties*** to the Cannella South and Rylee North JOAs is necessary to drill the Allocation Wells.

85.     Allowing CHK to drill across units will have the effect of unilaterally changing the interests in the wells and Epsilon's rights under the relevant JOAs.

86.     Epsilon has not consented to amend the Cannella South JOA and the Rylee North JOA.

87.     An actual, present and justiciable controversy has arisen between Epsilon and CHK concerning CHK's purported right to drill across units as it has proposed to do with the Allocation Wells.

88.     CHK's commencement of operations relating to the Allocation Wells at this time is in breach of the Cannella South and Rylee North JOAs.

WHEREFORE, Epsilon respectfully asks the Court to enter a judgment in its favor declaring that the Cannella South and Rylee North JOAs do not permit: (1) CHK to amend the Cannella South and Rylee North JOAs to reallocate interests under the JOAs; (2) CHK to drill across units without obtaining consent from all parties to those JOAs; and (3) CHK's Allocation Wells as proposed; and grant Epsilon such other and further relief as the Court deems just and appropriate.

## COUNT III – DECLARATORY JUDGMENT
## (CANNELLA NORTH AND CANNELLA SOUTH JOAS)

89.     The allegations of paragraphs 1 through 88 are incorporated by reference as if fully set forth herein.

90.     Though CHK agreed to participate in the Cannella Wells proposed by Epsilon, CHK has not taken any steps to begin drilling those wells in violation of CHK's responsibilities as Operator under the Cannella JOAs.

91.     The Cannella JOAs require CHK to move forward with the Cannella Wells Epsilon proposed within 90 days.

92.     The Conflict Provisions under the Cannella JOAs require CHK to drill the Cannella Wells before drilling the Allocation Wells CHK proposed.

93.     An actual, present and justiciable controversy has arisen between Epsilon and CHK concerning: (1) CHK's obligation to commence operations regarding the Cannella Wells proposed by Epsilon within 90 days from the date all parties elected to participate in those wells and (2) CHK's ability to drill the Allocation Wells prior to commencing the Cannella Wells under the Conflict Provisions of the Cannella JOAs.

94.     Epsilon seeks a declaratory judgment from this Court that CHK is required to commence operations to drill the Cannella Wells within 90 days and is prohibited from drilling the Allocation Wells prior to drilling the Cannella Wells under the terms of the Cannella JOAs.

WHEREFORE, Epsilon respectfully asks the Court to enter a judgment in its favor declaring that the Cannella JOAs: (1) require CHK to commence operations to drill the Cannella Wells within 90 days of 100 percent participation; (2) require CHK

to drill the Cannella Wells before the Allocation Wells; and (3) require CHK to forfeit or waive the operatorship of the Cannella Wells because CHK failed to comply with the terms of the JOAs; and grant Epsilon such other and further relief as the Court deems just and appropriate.

### COUNT IV– BREACH OF CONTRACT (CANNELLA NORTH, CANNELLA SOUTH, AND RYLEE NORTH JOAs)

95.    The allegations of paragraphs 1 through 94 are incorporated by reference as if fully set forth herein.

96.    The Cannella North, Cannella South, and Rylee North JOAs are binding contracts between CHK, Epsilon, and the remaining Non-Operators.

97.    CHK's conduct with respect to the Allocation Wells and the Cannella Wells constitutes a breach of these JOAs for several reasons.

98.    The Allocation Wells proposed by CHK conflict with the Cannella Wells proposed by Epsilon and already approved by the JOA parties.

99.    CHK did not comply with the Conflicts Provisions of the relevant JOAs when it proposed the Allocation Wells.

100.    Under the Cannella South, Cannella North, and Rylee North JOAs, CHK was obligated to propose the Allocation Wells within 30 days of Epsilon submitting a proposal for the Cannella Wells.  *See* Exhibit 5, Cannella South JOA, Article VI.B.6 ("if any party desires to propose the conduct of an operation that conflicts with a proposal that has been made by a party under this Article VI, such

18

party shall have thirty (30) days from delivery of the initial proposal, in the case of a proposal to drill a well or to perform an operation on a well where no drilling rig is on location, or twenty-four (24) hours, exclusive of Saturday, Sunday and legal holidays, from delivery of the initial proposal, if a drilling rig is on location for the well…."); *see also* Exhibit 1, Cannella North JOA, Article VI.6 (Order of Preference of Operations) (same). Exhibit 2, Rylee North JOA, Article VI.B.6 (Order of Preference of Operations) (same).

101.   Not only did CHK fail to properly propose the conflicting Allocation Wells, it actually consented to participate in and operate the Cannella Wells.

102.   Therefore, as there was 100 percent participation, CHK was required to commence operations on the Cannella Wells within 90 days. *See* Exhibit 5, Cannella South JOA, Article VI.B.1.

103.   CHK has breached the JOA terms and is in default.

104.   CHK has attempted to unilaterally amend the Cannella South and the Rylee North Unit JOAs so as to reallocate working interests to drill the Allocation Wells.

105.   In order to drill the Allocation Wells, CHK must obtain consent from *all* of the parties to the Cannella South JOA and the Rylee North Unit JOA.

106.   Epsilon did not consent to the requested amendment of the Cannella South and the Rylee North JOAs.

107.   CHK's commencement of operations relating to the Allocation Wells at this time is in breach of the Cannella South and Rylee North JOAs.

WHEREFORE, Epsilon respectfully requests the Court enter a judgment in its favor, award Epsilon actual damages representing the harm Epsilon has suffered as a result of CHK's refusal to commence operations on the Cannella Wells and CHK's affirmative steps towards operating the Allocation Wells, together with interest, costs and fees, including attorney's fees, and grant Epsilon such other and further relief as it deems just and appropriate.

## COUNT V – BREACH OF CONTRACT (BALTZLEY JOAs)

108.   The allegations of paragraphs 1 through 107 are incorporated by reference as if fully set forth herein.

109.   As discussed herein, CHK was obligated to commence operations within 90 days of the date Epsilon advised that 100 percent of the working interests had been accounted for – June 18, 2018.

110.   CHK was obligated to commence operations on or before September 16, 2018.

111.   CHK has adopted the position that it may unilaterally prevent the drilling of a well proposed by another JOA Party.

112.   CHK does not have the authority to do so under the Baltzley JOAs, and CHK has not identified the source of any such authority.

113.   CHK's refusal to operate and insistence that only it may operate wells within the Baltzley North and South Units is contrary to the terms of the Baltzley JOAs and constitutes a willful and material breach thereof.

WHEREFORE, Epsilon respectfully requests the Court enter a judgment in its favor, award Epsilon actual damages representing the harm Epsilon has suffered as a result of CHK's refusal to commence operations on the Proposed Baltzley Wells, together with interest, costs and fees, including attorney's fees, and grant Epsilon such other and further relief as it deems just and appropriate.

## COUNT VI – COMMON LAW WASTE

114.   The allegations of paragraphs 1 through 113 are incorporated by reference as if fully set forth herein.

115.   Epsilon, as a Non-Operator under the JOAs, has a property right in the mineral interests as described above.

116.   CHK, as the Operator, conducts, directs, and has full control of all operations in the Contract Area pursuant to the JOAs. *See, e.g.*, Exhibit 5, Cannella South JOA, Article V.A (Designation and Responsibilities of Operator). CHK has been the Operator pursuant each JOA since its execution. *See, e.g., id.*

117.   During its tenure as Operator, CHK has caused injury to the premises by proposing and taking affirmative steps to drill the Allocation Wells.

118.   These wells target the Upper Marcellus, which is less productive than the Lower Marcellus.

119.   Not only will the Allocation Wells be less profitable for Epsilon, they will violate the terms of the relevant JOAs and effectively prevent Epsilon from drilling the Cannella Wells that were approved well before CHK proposed the Allocation Wells.

120.   Epsilon is threatened with immediate and irreparable harm and will sustain irreparable harm as CHK continues to take affirmative steps towards drilling the Allocation Wells in violation of Epsilon's rights as a Non-Operator under the JOAs.

WHEREFORE, Epsilon respectfully requests the Court enter a judgment in its favor, award Epsilon actual damages representing the harm Epsilon has suffered as a result of CHK's commencement of operations relating to the Allocation Wells at the expense of the more productive Cannella Wells, together with interest, costs and fees, including attorney's fees, and grant Epsilon such other and further relief as it deems just and appropriate.

## COUNT VII – SPECIFIC PERFORMANCE

121.   The allegations of paragraphs 1 through 120 are incorporated by reference as if fully set forth herein.

122.    Epsilon has no adequate remedy at law to enforce the JOAs other than specific performance.

123.    Monetary damages would be inadequate to compensate Epsilon for CHK's violations of the JOAs because property rights are inherently unique and no two tracts of land are identical.

124.    Monetary damages would not allow Epsilon to carry out the same, unique exploration activities or prospects anywhere else.

125.    CHK's breaches of the JOAs have damaged the value of Epsilon's mineral interests in an amount that is speculative and difficult to determine.

126.    The only adequate remedy for the violation of Epsilon's rights is to compel CHK to specifically perform the terms and provisions of the JOAs, including the provisions regarding the election to participate and operate Well Proposals. *See* Exhibit 1, Cannella North JOA, Article VI.1 (Proposed Operations); Exhibit 5, Cannella South JOA, Article VI.B.1.; Exhibit 3, Baltzley North JOA, Article VI.1; Exhibit 4, Baltzley South JOA, Article VI.1.; *see also* Exhibit 1, Cannella North JOA, Article V.2.(a) (Determination of Participation); Exhibit 5, Cannella South JOA, Article VI.B.2.(a); Exhibit 3, Baltzley North JOA, Article VI.2.(a).; Exhibit 4, Baltzley South JOA, Article VI.2.(a).

WHEREFORE, Epsilon respectfully requests that this Court order CHK to specifically perform the JOAs by requiring CHK to: (1) to the drill the Cannella

Wells or, in the alternative, allow Epsilon to act as operator in the drilling of the Cannella Wells; and (2) drill the Proposed Baltzley Wells or, in the alternative, allow Epsilon to act as operator in the drilling of the Proposed Baltzley Wells; award Epsilon costs and fees, including attorney's fees; and grant Epsilon such other and further relief as it deems just and appropriate.

## COUNT VIII – INJUNCTIVE RELIEF

127.   The allegations of paragraphs 1 through 126 are incorporated by reference as if fully set forth herein.

128.   Epsilon seeks injunctive relief to protect its rights under the JOAs, which are in danger of irreparable harm.

129.   There is a substantial likelihood that Epsilon will prevail on the merits of its claims.  Despite the clear terms of the JOAs between CHK and Epsilon, CHK has refused to follow the proper procedure for responding to Well Proposals and in orchestrating Well Proposals as an operator.

130.   CHK's violations of Pennsylvania law will continue to cause immediate and irreparable harm to Epsilon.

131.   Unless enjoined by the Court, CHK will significantly dilute Epsilon's mineral interests by: (1) drilling the Allocation Wells; and (2) refusing to take affirmative steps to drill the Cannella Wells or the Proposed Baltzley Wells.

132.   CHK's actions, if not stopped, will irreparably harm Epsilon's property rights, deteriorating its mineral rights underlying both the Cannella South Unit and the Rylee North Unit.

133.   There is no adequate remedy at law available.   An award of money damages cannot compensate Epsilon for the harm caused to the value of its mineral interests and exploration activities, which are inherently unique.

134.   The irreversible harm to Epsilon's mineral interests are significantly greater than any monetary harm caused by delay to CHK's unlawful activities if injunctive relief is granted.   Such overwhelming loss to Epsilon clearly tips the balance of hardship in favor of an injunction.

135.   An injunction would serve the public interest because a public interest exists in the enforcement of contracts and protection of legitimate business interests. An injunction is beneficial to the public to have proper and efficient development of oil and gas resources to ensure there is no adverse effect on the supply of natural gas or an adverse impact on natural gas prices.

WHEREFORE, Epsilon respectfully requests that this Court issue a permanent injunction:

      a.   restraining CHK and anyone acting or participating by, through, or in concert with them from:

     i.   directly or indirectly preparing, operating, drilling, or in any way attempting to prepare, operate, or drill the Allocation Wells;

     ii.   interfering with Epsilon's preparation, operation, or drilling of the Proposed Baltzley Wells, which includes a requirement that, within three days, CHK remove any property from the Contract Area that interferes with the Proposed Baltzley Wells;

     iii.  interfering with Epsilon's preparation, operation, or drilling of the Cannella Wells, which includes a requirement that, within three days, CHK remove any property from the Contract Area that interferes with the Cannella Wells; and

     iv.  soliciting, encouraging, or causing any other entity or person to: (1) prepare, operate, or drill the Allocation Wells; (2) interfere with Epsilon's preparation, operation, and drilling of the Proposed Baltzley Wells; or (3) interfere with Epsilon's preparation, operation, and drilling of the Cannella Wells.

## JURY DEMAND

136.   Epsilon hereby demands a trial by jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure as to all issues or claims for which a jury trial is allowed.

Dated: September 20, 2018

Respectfully submitted,

/s/ *Megan S. Haines*
Megan S. Haines
Pa. ID No.
MCGUIREWOODS LLP
Tower Two-Sixty 260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222-3142
(412) 667-6000 (Telephone)
(412) 667-6050 (Facsimile)
mhaines@mcguirewoods.com

*Counsel for Epsilon Energy USA Inc.*

## VERIFICATION

I, Michael Raleigh, verify that I am the Chief Executive Officer of Epsilon Energy USA, Inc. ("Epsilon") and am authorized to execute this Verification on Epsilon's behalf. I have read the foregoing **Verified Complaint** and verify that the factual statements therein are true and correct. I understand this Verification is made subject to the penalties relating to unsworn falsification to authorities, 28 U.S.C. § 1746.

Michael Raleigh

Dated: September 20TH, 2018.